

**U.S. DEPARTMENT OF JUSTICE**

*United States Attorney*
*Eastern District of California*

*Benjamin B. Wagner*
*United States Attorney*

| | |
|---|---|
| 2500 Tulare Street, Suite 4401 | Phone  559/ 497-4000 |
| Fresno, CA 93721 | Fax      559/ 497-4099 |
| | TTD    559/ 497-4500 |

April 4, 2016

The Honorable Dale A. Drozd
U.S. District Judge

      Re:        *United States v. Armando Arnoldo Martinez, et al.*
                 Case No. 1:15CR304 DAD-BAM

Your Honor:

      In connection with the suppression motions filed herein, the government would like to bring the following supplemental authorities to this Court's attention regarding the effect of handcuffing on assessing the custodial status of a suspect.[1]

      The Federal Circuit Courts of Appeals in the Ninth and Fourth Circuits have indicated that handcuffing a suspect does not necessarily mean that the person is in custody for purposes of *Miranda*. In *United States v. Bautista,* 684 F.2d 1286, 1292 (9th Cir. 1982), the Ninth Circuit noted that handcuffing a suspect does not necessarily dictate a finding of custody for purposes of *Miranda* but was a reasonable measure to ensure the safety of the officer or the public. In *Bautista*, three men had robbed a bank. Officers spotted Bautista and another individual about one-half of a mile away from the bank and three and one-half blocks away from the suspected getaway car. The officers noted that Bautista and his accomplice matched the descriptions of the robbers, so they stopped them for questioning.

      As the police officers exited their car, Bautista voluntarily informed them that he had just gone to a nearby home and asked the woman who answered the door if she could call a cab for him. One of the officers frisked both men for weapons, but none were found. *Id*. at 1287. The officer also handcuffed both men. Leaving Bautista and his associate with his partner, the officer went to the woman's house to verify Bautista's story. *Id*. at 1287-88. The woman verified the story, but reported that Bautista had claimed his car had broken down. Bautista denied ever having a car.

      Bautista and his associate then were separated, and officers asked each suspect a series of questions. Both individuals gave the police inconsistent answers, because they did not know each other's names, the names of the streets, who dropped them off, who they were meeting, or the color of the car that dropped them off. Bautista also switched his story, claiming that he was, in fact, dropped off to make illicit drug purchases.

---

[1] The record indicates that only defendant Flores was handcuffed prior to the arrests in this case.

Approximately 10 minutes after the initial stop, the officers told Bautista and his accomplice that they were under arrest. The suspects were taken to police headquarters, searched, and given *Miranda* warnings. Police discovered several "bait bills," which are used to identify stolen money, and both suspects confessed to the robbery. *Id*. at 1288. On appeal, the defendants argued that they were in custody when they were questioned separately, so the officers' failure to give them *Miranda* warnings required suppression of the statements made during the stop, as well as later at the police station.

The Ninth Circuit stated that *Miranda* warnings are a necessary precursor to interrogation during a *Terry* stop if a suspect is taken into custody or the questioning takes place in a police-dominated or compelling atmosphere. *Id*. at 1291. The court indicated that even though *Terry* stops inherently may be somewhat coercive, they typically do not involve the type of police-dominated or compelling atmosphere necessitating *Miranda* warnings. The court further stated that *Miranda* warnings are only required when there has been such a restriction on persons' freedom as to render them in custody.

The Court found the following factors important to the custody analysis: "the language used by the officer to summon the individual, the extent to which he or she is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention and the degree of pressure applied to detain the individual." *Id*. at 1292 (citing *United States v. Booth,* 669 F.2d 1231, 1235 (9th Cir. 1991)). The court further indicated that these objective factors determine whether a reasonable, innocent person in such circumstances would conclude that after the brief questioning he or she would not be free to leave and was, therefore, in custody for *Miranda* purposes.

The Court stated that the defendants in *Bautista* were not in custody during their separate questioning, because they were not confronted by evidence of their guilt. Further, the Court found that neither the language used by the officers to summon the defendants, the physical surroundings, nor the duration of the detention could be considered coercive. *Id*. The Court also noted that the only difference between this situation and a routine *Terry* stop was the use of the handcuffs; however, the court stated that the use of handcuffs alone does not mean that a subject is in custody for purposes of *Miranda*. *Id*.

In *United States v. Leshuk,* the defendants sought to suppress statements they made after their initial confrontation by deputies at a marijuana cultivation site and prior to being given *Miranda* warnings. *United States v. Leshuk*, 65 F.3d 1105 (4th Cir. 1995). In *Leshuk,* the Fourth Circuit indicated that *Miranda* is meant to protect statements that a suspect makes during custodial interrogations and further stated that a suspect is in custody for the purposes of *Miranda* "if the suspect has been formally arrested or if he is questioned under circumstances in which his freedom of action is curtailed 'of the degree associated with a formal arrest.'" *Id*. at 1108 (quoting *Stansbury v. California*, 511 U.S. 318 (1994)). The Court cautioned that this test does not necessarily convert a *Terry* stop into custody for the purposes of *Miranda*. The Court indicated the circumstances of the interrogation should be viewed objectively, rather than through the subjective views harbored by the interrogating officers or the person being questioned. *Id*. at 1108 (quoting *Stansbury v. California*, 511 U.S. 318 (1994)). Therefore, the Court stated that instead of looking to whether the stop objectively restricts an individual's freedom, it is important to look at whether the stop lasted no longer than necessary to verify or dispel the officer's suspicion.

The Court concluded that Leshuk was not in custody for the purposes of *Miranda* until the officers discovered the marijuana and informed him that he was under arrest. *Id*. at 1110. Although the deputies in *Leshuk* did not handcuff the defendants during the course of the encounter, the Fourth Circuit stated in *dicta* that, in considering the Fourth Amendment standards regarding seizures, "we have

concluded that drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for *Miranda* purposes." *Id*. at 1109-10.

*See also United States v. Chacon,* 2009 WL 1520007 (D.Nev. 2009) (finding that ordering kidnapping suspect from vehicle at gunpoint and placing him in handcuffs "did not transform the investigatory stop into a custodial arrest"); *United States v. Touzel*, 409 F.Supp.2d 511, 522 (D.Vt. 2006) (finding that "handcuffs do not automatically transform detention into custodial interrogation;" instead, courts look at "all the circumstances presented") (quoting *United States v. Newton*, 369 F.3d 659, 677 (2d Cir. 2004).

                                              Sincerely,

                                              BENJAMIN B. WAGNER
                                              United States Attorney

                                 by  /s/ Karen A. Escobar
                                              KAREN A. ESCOBAR
                                              Assistant United States Attorney

cc:  Peter Jones, Counsel for A. Martinez
     Daniel Harralson, Counsel for J. Martinez-Tinoco
     Gary Huss, Counsel for Flores
     Janet Bateman, Counsel for Jimenez